IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


SAMUEL EZELL,                          :

    Petitioner,                   :
                                                        CIVIL ACTION 09-0460-WS-M
v.                                     :
                                                        CRIMINAL ACTION 07-0385-WS-M
UNITED STATES OF AMERICA,              :

Respondent.                            :


## REPORT AND RECOMMENDATION


    Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 68-69).  This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases. It is now ready for consideration.  A hearing was held on November 30, 2010 at the U.S. Courthouse in Mobile.  After reviewing all pleadings of record and considering the testimony provided at the hearing, it is recommended that Petitioner's Motion to Vacate (Docs. 68-69) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Samuel Ezell on all claims.

    On October 25, 2007, Petitioner was arrested pursuant to a criminal complaint filed with this Court by a special agent of the United States Drug Enforcement Administration (hereinafter

*DEA*) (Docs. 1-2).  On November 27, 2007, Ezell was indicted for the following:  engaging in a conspiracy to possess, with intent to distribute, five kilograms of cocaine in violation of 21 U.S.C. § 846; attempting to possess, with intent to distribute, thirty kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1); and forfeiture (Doc. 12).  On January 24, 2008, Petitioner entered into a Plea Agreement in which he pled guilty to the conspiracy charge against him (Doc. 38).  On July 1, 2008, Judge Steele sentenced Petitioner to 135 months on the conviction and five years of supervised release following his release from prison and assessed a fine of one hundred dollars (Doc. 61). Ezell did not appeal the conviction or sentence (Doc. 68, p. 2).

Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on July 27, 2009 in which he raised the following claims:  (1) his attorney rendered ineffective assistance in that he failed to object to a two-point enhancement of his sentence for possessing a firearm; and (2) his attorney rendered ineffective assistance in failing to object to the Court's determination of the base offense level for sentencing (Doc. 68, pp. 4-5; *cf*. Doc. 74, p. 4).  On September 25, 2009, Ezell amended his Motion to raise a third claim of ineffective assistance, *i.e.*, that his attorney failed to raise claims, on direct appeal, challenging the base offense level for sentencing and the two-level enhancement for a firearm made by the sentencing judge (Doc. 81; *see also* Doc. 112).

2

Respondent argued that Ezell's claims were barred from review because he waived them in his plea agreement (Doc. 74, pp. 4-8). The undersigned Magistrate Judge found the Government's argument persuasive and recommended that this petition be denied on those grounds and that this action be dismissed (Doc. 86). District Court Judge Steele, however, was not so persuaded and rejected Respondent's arguments and the undersigned's Report and Recommendation (Doc. 92).

Respondent has now responded to Petitioner's Motion by addressing the merit of Petitioner's three claims (Docs. 94, 113, 130). Ezell has filed replies to the responses (Docs. 96, 119, 132).

All three of Ezell's claims pertain to the ineffectiveness of his attorney. The Court notes that, in *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the showing a habeas petitioner must make to prevail on an ineffective assistance claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that

3

renders the result unreliable.

*Id*. at 687.   In *Evitts v. Lucey*, 469 U.S. 387 (1985), the United States Supreme Court extended *Strickland* to the appellate level, stating that "[a] first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."   *Id*. at 396.

Petitioner's first two claims concern sentencing issues. Specifically, Ezell asserts that his attorney rendered ineffective assistance in failing to object to (1) a two-point enhancement of his sentence for possessing a firearm and (2) the Court's determination of the base offense level for sentencing (Doc. 68, pp. 4-5; *cf*. Doc. 74, p. 4).   In making these claims, Petitioner has argued that the Court improperly sentenced him from a possible range of 135-68 months instead of a range of 87-108 (Doc. 69, pp. 10, 16, 20, 21, 28, 30).   Ezell's argument, essentially, is that the sentence range should have been calculated from an offense level of 32, the corresponding level for five kilos of cocaine (the amount to which he pled guilt), with no additional time for the gun as it was not proven to have been his weapon, and with a downward departure of three levels for accepting responsibility for his actions.   This would have resulted in a base offense level of 29 with a lower corresponding sentencing range.

Before addressing Petitioner's specific claims, the Court will first review the Court records relevant to Ezell's sentencing. The Presentence Investigation Report (hereinafter *PSI* or *Report*), prepared for the Court and the Parties prior to sentencing, proposed the following guideline calculations. Following a recitation of Ezell's relevant conduct, the Report stated that "Ezell [was] being held accountable for 125 kilograms of powder cocaine; and 15 kilograms of methamphetamine" (Doc. 55, ¶¶ 4-23). Based on these amounts, the PSI indicated that Petitioner's base offense level was 38, with an increase of two levels for possession of a firearm, and a reduction by three levels for acceptance of responsibility, for a total offense level of 37 (Doc. 55, ¶¶ 29, 30, 35-36, 39). After considering Ezell's criminal history (Doc. 55, ¶ 44), the Report indicated that Petitioner's "guideline range of imprisonment [was] 210 to 262 months" (Doc. 55, ¶ 89).

Ezell's attorney, Arthur J. Madden, III, filed a pleading with the Court in which he questioned the PSI, noting specifically that Petitioner's "culpability, even including relevant conduct is less than 50 kilograms of cocaine. The base offense level in paragraph 29 should be no more than level 34" (Doc. 49, ¶ 1). Madden further asserted that Ezell should receive "a two level reduction in the base offense level for playing a minor role in the overall conspiracy" (Doc. 49, ¶ 2). The attorney further argued that Petitioner's lower culpability

5

should result in no more than the statutory minimum sentence of ten years (Doc. 49, ¶ 3). After reviewing Madden's objections, the Probation Officer who had submitted the PSI determined that the calculations in the Report had been correct (Doc. 55, Attachment 1).

At the Sentencing Hearing, Ezell stated that he understood what was in the PSI (Doc. 62, p. 44). Attorney Madden then informed the Court that he had reached an agreement with the Government wherein the "base offense level would be 34, [with] a two-level enhancement for the gun, and a three-level reduction for acceptance of responsibility . . . for an adjusted base offense level of 33" (Doc. 62, p. 45; *see generally* pp. 44-45). After the Assistant U.S. Attorney acknowledged that the agreement had been made, Judge Steele adopted it and noted that this would generate a guideline range of 135 to 168 months (Doc. 62, p. 45). Judge Steele then sentenced Petitioner to 135 months (Doc. 62, p. 48).

The Court will now take up Ezell's claims, beginning with the assertion that his attorney rendered ineffective assistance in failing to object to the Court's determination of the base offense level for sentencing. Petitioner's error, in this claim, is that he fails to acknowledge his relevant conduct in the calculation. Ezell mistakenly assumes that he is only culpable for the five kilos of cocaine to which he actually pled guilt.

Under the Sentencing Guidelines,[1] "district courts [are] instructed] to consider not merely the charged conduct, but rather all 'relevant conduct,' in calculating a defendant's offense level." *U.S. v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006). Evidence that may be considered includes conduct for which no charge has been brought as well as conduct for which a defendant has been acquitted. *U.S. v. Hasson*, 333 F.3d 1264, 1279 n.19 (11th Cir. 2003), *cert. denied*, 541 U.S. 1056 (2004). This evidence includes drug quantities that were the subject of indictment counts which were dismissed. *U.S. v. Alston*, 895 F.2d 1362, 1371-72 (11th Cir. 1990). Relevant conduct must be proven—not by a beyond-all-reasonable-doubt standard, but—by a

---

[1]Section 1B1.3(a) states as follows: "Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
(4) any other information specified in the applicable guideline."

preponderance-of-the-evidence standard. *Hamaker*, 455 F.3d at 1336 (*citing U.S. v. Duncan*, 400 F.2d 1297, 1304-05 (11th Cir.), *cert. denied*, 546 U.S. 940 (2005)). The Court also notes that when a defendant does not challenge the alleged relevant conduct, it is deemed to be true. *U.S. v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005).

At the sentencing hearing, Freddy Paniagua testified that he had worked with Ezell and his co-defendant, Hale, putting together drug deals with the two of them; Hale and Ezell pooled their money to put the deals together (Doc. 62, pp. 4-5, 7, 8-9). When the three of them started working together, five years earlier, they would put together deals about once a month, for three-to-five kilos of cocaine (*id.* at pp. 10-11). After working together for two years, Hale and Ezell started buying eight-to-ten kilos a month, with Paniagua fronting them five-to-ten kilos as well; this went on for about two years (*id.* at pp. 11-13). Over that four-year period, Paniagua estimated that he sold them about three hundred pounds of weed and ten pounds of meth in addition to the cocaine already discussed (*id.* at p. 14). The Witness stated that he had quit making deals one year earlier because he had been arrested for dealing drugs, after which he began cooperating with law enforcement; specifically, Paniagua began to set up a deal with Hale and Ezell for thirty kilos of cocaine (*id.* at pp. 13-15). Paniagua estimated that he had sold two hundred kilos of cocaine to Hale and Ezell during his course

of dealing with them (*id.* at pp. 17-18).

The Factual Resume, made a part of Ezell's plea agreement, states that between August 2004 and October 25, 2007, Hale and Ezell "conspired with each other and with others to possess with intent to distribute more than 5 kilograms of cocaine" (Doc. 38, Factual Resume, p. 2). During September or November 2006, Ezell, accompanied by Hale, drove his Chevrolet Avalanche from Mobile to Dallas to deliver currency of over one hundred thousand dollars to Paniagua to facilitate a drug transaction for cocaine and methamphetamine (*id.*). In October 2007, Hale and Ezell put together a deal for thirty kilos of cocaine with Paniagua where a partial payment of $300,000 was to be made for the drugs; Ezell was putting up $100,000 of the cash (*id.* at pp. 4-5). When Ezell and Hale showed up, in Ezell's vehicle, to complete the transaction, they were arrested (*id.* at pp. 5-6). The Factual Resume was signed by Ezell and his attorney, Arthur Madden (*id.* at p. 6). In entering into his Plea Agreement, Petitioner signed a statement stipulating that "the Factual Resume [was] true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt (Doc. 38, p. 12). At the sentencing hearing, Ezell stated that he understood what was contained in the PSI (Doc. 45, p. 44).

The Court finds that Petitioner's claim, that his attorney rendered ineffective assistance in failing to object to the

Court's determination of the base offense level for sentencing, is without merit. The record demonstrates that Mr. Madden repeatedly attempted to get the original offense level of 38 reduced to 34; ultimately, he was successful in that effort. Ezell's insistence that the offense level should have started at 32 fails to acknowledge that his relevant conduct supported the higher level; there would have been no basis for Madden to have made the argument that Petitioner asserted.

Ezell has also claimed that his attorney rendered ineffective assistance in that he failed to object to a two-point enhancement of his sentence for possessing a firearm. Petitioner has argued that the Prosecutor is required to prove, beyond a reasonable doubt, every element of the charged crime and that this has not been done with respect to the gun (Doc. 69, pp. 10, 13, 20, 24-25, 31).

In the Factual Resume, after the recitation of Ezell's and Hale's final drug deal with Paniagua in which the former two were arrested, the following statement is made: "A fully loaded, black, .40 caliber semi-automatic pistol was located in the center console of Ezell's vehicle" (Doc. 38, Factual Resume, p. 6). Plaintiff signed the Factual Resume on this very page (*id.*). As noted earlier, Petitioner also signed a statement stipulating that "the Factual Resume [was] true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt (Doc.

38, p. 12); at the sentencing hearing, Ezell stated that he understood what was contained in the PSI (Doc. 45, p. 44). Petitioner's assertions now belie his earlier statements.

The Sentencing Guidelines instruct the Court that "[i]f a dangerous weapon (including a firearm) was possessed, increase [the offense level] by 2 levels." U.S. Sentencing Guidelines, § 2D1.1(b)(1). With the facts as they are and admitted to by Ezell in his Factual Resume, it would have been futile for Attorney Madden to have objected to the two-level enhancement of Petitioner's sentence. The Court finds that Madden's decision not to object was a sound tactical strategy; the Court further finds that he was not deficient in representing Ezell in this matter. *See Caderno v. U.S.*, 256 F.3d 1213, 1217 (11th Cir. 2001), *cert. denied*, 534 U.S. 1167 (2002) ("There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy"). Petitioner's claim otherwise is without merit.

Ezell also claims that his attorney failed to raise these same two claims on direct appeal. More specifically, Petitioner has asserted that his attorney did not file an appeal though he had requested him to do so. The Court notes that

> [t]he Supreme Court has held that counsel has
> a constitutional duty "to consult with the
> defendant about an appeal when there is
> reason to think either (1) that a rational

> defendant would want to appeal . . . , or (2)
> that this particular defendant reasonably
> demonstrated to counsel that he was
> interested in appealing." *Roe v. Flores-*
> *Ortega*, 528 U.S. 470, 480, 120 S.Ct. 1029,
> 1036, 145 L.Ed.2d 985 (2000). To "consult,"
> means "advising the defendant about the
> advantages and disadvantages of taking an
> appeal, and making a reasonable effort to
> discover the defendant's wishes." *Id.* at
> 478, 120 S.Ct. at 1035; *see also Thompson v.*
> *United States*, 504 F.3d 1203, 1206 (11th Cir.
> 2007); *Gomez-Diaz v. United States*, 433 F.3d
> 788, 792 (11th Cir. 2005).

*Ramos v. United States*, 301 Fed.Appx. 902, 904 (11th Cir. 2008).

The Court further notes that "a lawyer who disregards specific

instructions from the defendant to file a notice of appeal acts

in a manner that is professionally unreasonable." *Roe*, 528 U.S.

at (2000). In such circumstances, prejudice is presumed; "[a]

defendant who shows that his attorney has ignored his wishes and

failed to appeal his case need only demonstrate that, but for the

attorney's deficient performance, he would have appealed."

*Gomez-Diaz*, 433 F.3d at 792.

An evidentiary hearing was held on November 30, 2010 at the

U.S. Courthouse in Mobile at which the Government, in prefatory

remarks, noted that Ezell's criminal codefendant, Jeremiah Hale,

had raised the issue of his attorney's failure to appeal in a §

2255 action and that Ezell was just duplicating that effort. .

The Government went on to assert that Ezell did not raise his

claim regarding his attorney's failure to appeal until he amended

his petition.

Petitioner called three witnesses to testify on his behalf before giving his own testimony. Those three witnesses were Deborah Hale, Denise Ezell, and Jessie Mae Hale. The Government called a single witness: Arthur Madden.

Deborah Hale stated that Ezell is her nephew. She first met Arthur Madden after Petitioner was incarcerated when the family got together, pooled their money, and hired him to represent Ezell; she met with Madden several times before Petitioner pled guilty. Immediately after Ezell was sentenced, Hale, along with other family members, met with Madden and told him that they wanted him to file an appeal; Madden told them to come by the office to discuss it, but that he would file an appeal. The Witness stated that she went by the office several times with Jessie Mae Hale and that she called Madden's office daily, but that she never talked with him; the attorney never returned her calls. Hale testified that she did not know if Madden's full fee had been paid. It was Hale's opinion that Madden was more concerned with getting his money than filing an appeal for Ezell.

Denise Ezell stated that she was Petitioner's wife and that she met Madden at the first court hearing; she was present when he pled his guilt and at his sentencing. The Witness testified that she asked Madden, in the courtroom following sentencing, to file an appeal on her husband's behalf. She also called the attorney's office within ten days of sentencing and left a message saying that she had talked with Ezell and that he wanted

to file an appeal.  Ezell said that the family paid Madden
approximately $5800 to $6000 out of the $25,000 fee.  The Witness
stated that she had heard the judge, at sentencing, state that
there was a time limit to appeal.  It was Mrs. Ezell's opinion
that Madden did not do a good job representing her husband and
that he needed to file an appeal regarding the gun charge and
because his sentence was too harsh.

Jessie Mae Hale testified that she was Petitioner's
grandmother and that she met Madden when hiring him to represent
her grandson; she stated that she paid Madden a good bit of money
and that it was the full amount for which he had asked.  The
Witness was present at the sentencing and immediately thereafter,
she, and other family members, met with Madden and asked them to
file an appeal.  Hale testified that she talked with Madden on
the phone on three different occasions and went by his office to
pick up some paperwork for Petitioner, all within the ten-day
appeal time, and told him that he needed to file an appeal on
Ezell's behalf; though the attorney told her he would go see
Ezell in jail, he never did.

Petitioner Samuel Ezell testified that he first met his
attorney, Arthur Madden, after he had been arrested and was in
the Mobile Metro jail.  After sentencing, Petitioner told his
attorney that they needed to talk; Madden told him he would come
see him, but he never did.  The Witness talked to Madden by phone
from jail three or four days after sentencing; though his

attorney told him that he had waived the right, Ezell told Madden
he still wanted to appeal.  Nevertheless, Madden never did file
an appeal. Petitioner stated that his family did not pay his
attorney's full fee.  On cross-examination, Ezell testified that
his plea agreement contained a provision, discussed with him by
his attorney, which waived his right to appeal; Judge Steele also
went over that waiver at the plea hearing.  The Witness stated
that, with Madden's encouragement, he had attempted to cooperate
with the Government, but that it did not work out; the
Government's attorney said that the DEA could not use Ezell's
testimony because he had lied to them.  At sentencing, Petitioner
was informed by the judge of his right to appeal through the
court.  Directly after the sentencing, Ezell told Madden that
they needed to talk about an appeal; on the phone, Petitioner
told his attorney that he wanted to appeal the gun charge and the
drug amount.

Arthur Madden testified that he had been a lawyer in Mobile
County for thirty-three years and had done a good bit of criminal
work during that time.  He was retained by Petitioner's family to
represent Ezell.  Madden stated that, after examining the case
against his client, he counseled Ezell to plead guilty and
cooperate with the Government as "the weight of the evidence was
very strong" against him.  Madden specifically noted that
Petitioner's codefendant had been dealing drugs with an
undercover agent for more than a year before the arrest; also,

15

Ezell was arrested with a large amount of cash and a weapon. The
Attorney stated that Ezell understood that because Hale was
pleading, there was not much maneuvering room for Ezell in trying
the case. The Attorney stated that he went over the plea
agreement with Ezell very carefully because of his trouble
reading; after doing so, Petitioner signed the agreement which
contained a provision limiting his right to appeal. Judge Steele
also went over the agreement with Petitioner at the plea hearing.
Ezell met with the Government to provide information, but the DEA
declined to continue the relationship, saying that Petitioner had
lied to them; Madden would not testify as to his opinion
regarding the allegations, citing attorney-client privilege, but
did admit that he did not press for a downward departure at
sentencing. Madden did not recall meeting with the family in
court after sentencing or Ezell's telling him that he wanted to
appeal; the Attorney stated that if Petitioner had wanted to
appeal, he would have done that. The Attorney stated that he
felt good about the disposition of the case following sentencing
as he felt like he had gotten a good result; he had no reason to
believe that Petitioner would want to appeal. In Ezell's
situation, Madden did not think that an appeal was appropriate,
but he would have done so if asked, as he had done in other
similar circumstances. The Attorney stated that he talked to
Petitioner's grandmother three-or-four times after sentencing,
but that neither she nor any other family member ever asked him

to appeal the case; he never said that he would not appeal the case. Madden stated that he never refused any phone calls. On cross-examination, the attorney stated that the family did not pay him the full fee for representing Petitioner; he stated, though, that non-payment had nothing to do with his not filing an appeal. Upon questioning by the Court, Madden stated that there would have been no downside to appealing; there would have been several steps involved for him, but they were not prohibitive.

At the close of the evidence, the Government noted that Petitioner did not raise a claim regarding his attorney's failure to appeal until his amended complaint and that it was ten months later before he asserted, in pleadings, that his family had tried to get Madden to file an appeal on his behalf. The Government also asserted that Ezell never provided any details of the circumstances under which he or his family made their wishes known to his attorney.

After hearing the evidence presented, the Court notes that there is a conflict in what has been presented which requires that a credibility determination be made. While Deborah Hale, Denise Ezell, Jessie Mae Hale, and Samuel Ezell all testified that they had made Attorney Madden aware of Petitioner's wish to file an appeal, Madden stated that no one expressed this thought to him. The Court finds that Madden's testimony was the credible testimony and accepts it as the truth. The Court reaches this determination based on the fact that Madden is an attorney who

has practiced in this Court for many years and enjoys as good a
reputation as any other lawyer appearing before it.  The Court
also notes that, while the testimony was being given, Samuel
Ezell made no eye contact with the other three witnesses who
testified on his behalf; instead, he looked down during the
entirety of the presentation.  Furthermore, Petitioner's failure
to pursue an appeal on his own, though he readily admitted being
made aware of the availability of this option, belies his
testimony of the necessity for such action.  And finally, Ezell's
failure to present this claim in a timely fashion, providing
factual details of the circumstances under which he and his
family told Madden of Petitioner's wish to appeal, leads the
Court to believe that the claim was only an afterthought made in
hindsight.

Having made this determination, the Court finds that Madden,
in preparing Ezell for entering into his plea agreement,
discussed with Petitioner the limited right of appeal he would
have upon entering into it.  The Court finds that Petitioner was
made aware of his right to appeal, but that he chose not to
pursue it.  Finally, the Court finds that Madden was not
deficient in not filing an appeal on Ezell's behalf as Madden had
no reason to believe that an appeal was warranted, necessary, or
desirable.  As such, the Court finds that Petitioner's claim that
his attorney was ineffective in not filing an appeal on his
behalf is without merit under *Ramos* and *Strickland*.

In conclusion, Ezell has raised three claims in this petition. None of these claims have merit. Therefore, it is recommended that this Motion to Vacate (Docs. 68-69) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Samuel Ezell.

Furthermore, pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the undersigned recommends that a certificate of appealability (hereinafter *COA*) in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a COA. 28 U.S.C. § 2253(c)(1). A COA may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). When the merits of a claim are reached, a COA should issue only when the petitioner demonstrates "that

19

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. In this action, Petitioner has raised three claims which raise issues of constitutional dimension; however, reasonable jurists could not debate over whether there is merit to these claims.

**CONCLUSION**

In conclusion, it is recommended that Petitioner's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2255, be denied. As Petitioner is not entitled to a certificate of appealability, he is, therefore, not entitled to appeal *in forma pauperis*.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within

20

fourteen days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objection party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded).**
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this 6th day of December, 2010.


s/BERT. W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE