# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 07-0385-WS-C |
| | ) | |
| SAMUEL EZELL, | ) | CIVIL NO. 09-0460-WS |
| | ) | |
| Petitioner. | ) | |

## ORDER

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 68). Also before the Court are the Magistrate Judge's Report and Recommendation (doc. 143), as well as petitioner's Statement of Objection (doc. 144) and supporting Memorandum of Law (doc. 145). All briefing has concluded, and the § 2255 Petition is now ripe for disposition.

**I.     Relevant Background and Procedural History.**

On January 24, 2008, petitioner, Samuel Ezell, entered a guilty plea in this District Court to a single count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. (*See* docs. 38, 40.)[1] The Presentence Investigation Report (doc. 55) prepared by the U.S. Probation Office prior to sentencing included recommendations (based on relevant conduct) that Ezell be held responsible for 125 kilograms of powder cocaine and 15 kilograms of methamphetamine, yielding a base offense level of 38. After a two-level enhancement for use of a firearm and a three-level reduction for acceptance of responsibility, the PSR concluded that Ezell's adjusted offense level should be 37 which, coupled with a criminal history category of I, produced a guideline range of 210 to 262 months. At the sentencing hearing conducted on July 1, 2008, however, Ezell's counsel worked out an agreement with the Government under which

---

[1] The Plea Agreement signed by Ezell included a section labeled, "Limited Waiver of Right to Appeal Sentence," pursuant to which Ezell "knowingly and voluntarily waive[d] the right to appeal any sentence imposed in this case," with certain exceptions such as claims of ineffective assistance of counsel. (Doc. 38, ¶¶ 20-22.)

the base offense level was set at 34, with the adjustments remaining the same, yielding an adjusted offense level of 33 and a guideline range of 135 to 168 months. The undersigned adopted that agreement and imposed a low-end sentence of 135 months. (*See* doc. 61.)

Ezell did not appeal from his sentence, either directly or through his retained counsel, Arthur Madden. On July 23, 2009, however, Ezell filed a § 2255 petition collaterally attacking his sentence on the stated grounds that Madden had rendered ineffective assistance at the sentencing hearing by failing to object to the two-level gun enhancement and the drug quantity from which Ezell's base offense level was derived. Two months later, Ezell requested (and ultimately received) leave of court to amend his § 2255 petition to raise an additional claim that "[d]efense counsel Arthur J. Madden, III denied Mr. Ezell of his constitutional right to appeal these objections, after Mr. Ezell had requested counsel to do so." (Doc. 81, at 3; *see also* doc. 112.)

To assist him in evaluating credibility issues concerning whether Ezell had or had not asked Madden to file an appeal on his behalf, Magistrate Judge Milling conducted an evidentiary hearing on November 30, 2010. That hearing was expressly confined to "Petitioner's claim that his trial counsel failed to file a notice of appeal and appeal his sentence as instructed." (Doc. 134, at 2.) Judge Milling appointed new counsel, W. Gregory Hughes, to represent Ezell at that hearing as required by Rule 8(c) of the Rules Governing Section 2255 Proceedings. (*Id.* at 1.)[2] At that hearing, both Ezell and Madden testified, as did three of Ezell's family members, including his aunt (Deborah Hale), his wife (Denise Ezell) and his grandmother (Jessie Mae Hale). A complete audio recording of that hearing was made by court personnel and is maintained by the Clerk's Office.

Following the evidentiary hearing, the Magistrate Judge entered a Report and Recommendation (doc. 143) recommending that Ezell's § 2255 petition be denied in its entirety, that no certificate of appealability issue, and that Ezell not be permitted to appeal *in forma pauperis*. The Magistrate Judge found that Ezell's claims of ineffective assistance of counsel relating to the firearm enhancement and drug quantity / base offense level at the sentencing

---

[2] In that regard, Ezell has been represented by his appointed counsel, Hughes, both at the hearing and in Hughes' preparation of a Statement of Objection and Memorandum of Law challenging the Magistrate Judge's Report and Recommendation.

hearing failed as a matter of law because the objections that Ezell faulted counsel for not raising at sentencing would have been baseless. (Doc. 143, at 6-11.)[3] With respect to Madden's failure to file an appeal, the Report and Recommendation detailed the testimony provided by each witness, and specifically concluded "that Madden's testimony was the credible testimony," while Ezell's was not. (*Id.* at 17.) That credibility determination logically paved the way for findings that (i) Madden had discussed with Ezell his waiver of most of his appeal rights before he entered his guilty plea; (ii) Ezell knew of his right to appeal but chose not to pursue it; (iii) Ezell never asked or instructed Madden to file an appeal; and (iv) "Madden was not deficient in not filing an appeal on Ezell's behalf as Madden had no reason to believe that an appeal was warranted, necessary, or desirable." (*Id.* at 18.) In light of these determinations, the Magistrate Judge opined that petitioner's ineffective assistance claim predicated on counsel's purported failure to file an appeal after being requested to do so was without merit, and recommended denial of Ezell's § 2255 petition.

Ezell timely filed his Statement of Objection, wherein he objects to several aspects of the Magistrate Judge's findings and recommendations concerning his claim that Madden was ineffective in failing to file a notice of appeal. Specifically, petitioner's Statement of Objection asserts that the recommendation should not be adopted because (i) the record establishes that Madden failed to discharge his duty to consult with and advise Ezell about the pros and cons of filing an appeal; (ii) the Magistrate Judge improperly looked to the merits of any possible appeal,

---

[3] As to the firearm enhancement, Judge Milling reasoned that the factual resume signed by Ezell upon pleading guilty included admissions that he had a .40 caliber semi-automatic pistol in the center console of his vehicle when he and his co-defendant arrived to complete a deal for 30 kilograms of cocaine. (Doc. 38, at 16-18.) In light of those admissions, the Magistrate Judge found, "it would have been futile for Attorney Madden to have objected to the two-level enhancement" for the firearm. (Doc. 143, at 11.) With respect to drug quantity, the Report and Recommendation recited extensive evidence of relevant conduct presented at sentencing. That evidence attributed hundreds of kilograms of cocaine to Ezell, such that Ezell's contention that Madden should have insisted that he be held responsible for no more than 5 kilograms lacked any plausible factual basis. Besides, the record is crystal clear that Madden <u>did</u> object to the drug quantity recommendations in the PSR, and successfully forged an agreement with the Government at sentencing concerning drug quantity / base offense level that reduced the low end of Ezell's sentencing guidelines range from 210 months to 135 months. The Report and Recommendation correctly opined that such circumstances are not the stuff of a Sixth Amendment violation. (*Id.* at 6-10.)

rather than focusing on the question of whether Ezell wanted to appeal; (iii) Ezell's failure to raise this claim in his initial § 2255 petition has no bearing on the veracity of his testimony that he asked Madden to file a notice of appeal; (iv) Madden's performance fell short of ABA Standards and Local Rules concerning consultation with Ezell as to his appeal rights; and (v) the circumstances justify issuance of a Certificate of Appealability even under the credibility determinations outlined in the Report and Recommendation.

Before reaching those issues, it bears noting that Ezell has lodged no objections to the Report and Recommendation's reasoning and proposed disposition of his § 2255 claims alleging ineffective assistance of counsel with respect to the firearm enhancement and base offense level determinations at sentencing. This Court's obligation to conduct *de novo* review is confined to disputed portions of the Report of Recommendation. *See United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010) ("The district court must make a *de novo* determination ***of any disputed portions*** of the magistrate judge's report or recommendation") (emphasis added); 28 U.S.C. § 636(b)(1) (similar). There is no dispute as to these claims. Besides, even if *de novo* review were appropriate as to the firearm and drug quantity claims, the Court concurs with the Report and Recommendation's rejection of both ineffective assistance claims relating to sentencing guidelines issues. Accordingly, after due and proper consideration of all portions of this file deemed relevant to those issues raised, the December 6, 2010 recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) with respect to Ezell's grounds for § 2255 relief predicated on ineffective assistance of counsel at sentencing is **adopted** as the opinion of this Court. Ezell's § 2255 petition is **denied** insofar as it seeks relief on theories of ineffective assistance of counsel relating to the guideline calculations (base offense level and firearm enhancement) applied at his sentencing hearing.

**II.    Analysis.**

   ***A.    Standard of Review of Report and Recommendation.***

The Magistrate Judge conducted the evidentiary hearing and prepared his recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), which authorizes designation of a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, … of applications for posttrial relief made by individuals convicted of criminal offenses." *Id.* "When a district court refers a matter to a magistrate judge to conduct an evidentiary hearing

and make findings of fact, … the district court is generally free to employ the magistrate judge's findings to the extent that it sees fit – the court may adopt the magistrate judge's findings in whole, in part, or not at all." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007).

Having reviewed the Report and Recommendation, as well as Ezell's objections, this Court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Whenever any party makes a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a *de novo* review of the record with respect to that factual issue. … [T]he district court's consideration of the factual issue must be independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988). In that regard, the district judge is permitted "to adopt the credibility findings made by a magistrate judge without conducting a new hearing before making a final determination." *Amlong*, 500 F.3d at 1245; *see also United States v. Dorvilus*, 2009 WL 4854131, *5 (11th Cir. Dec. 17, 2009) ("A district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings.").[4] In all cases, however, "[w]hen objections are made to findings which the magistrate judge made based upon the testimony of witnesses, we require the district court to review the transcript or listen to the tape-recording of those proceedings." *Willis v. United States*, 2009 WL 2840746, *1 (11th Cir. Sept. 4, 2009) (citation and internal quotation marks

---

[4] That said, the Eleventh Circuit has "unambiguously and repeatedly observed that a district court may not reject a magistrate judge's factual and credibility findings" without conducting a separate hearing. *Amlong*, 500 F.3d at 1245; *see also Powell*, 628 F.3d at 1256-57 (reaffirming precedents that, except where magistrate judge's determinations contradict the record, a district court abuses its discretion when it enters an order inconsistent with magistrate judge's credibility choices without personally hearing the live testimony). In a nutshell, then, the rule is that this Court may adopt Judge Milling's credibility determinations without holding a new hearing, but that it may not jettison his credibility determinations without hearing the disputed testimony live and personally observing the witnesses. *See Powell*, 628 F.3d at 1257 (fact finder may satisfy requirement that it observe witnesses in making credibility determinations "either by the district judge accepting the determination of the magistrate after reading the record, or by rejecting the magistrate's decision and coming to an independent decision after hearing the testimony and viewing the witnesses") (citation omitted).

omitted).[5]  For that reason, the Court has not blindly accepted the detailed summary of witness testimony recited in the Report and Recommendation, but instead has listened to the entire official audio recording of the November 30 evidentiary hearing for purposes of evaluating Ezell's objections to recommended findings of fact based on witness testimony.

### B. *Ineffective Assistance Claim Based on Counsel's Failure to File Appeal.*

As discussed *supra*, petitioner's Statement of Objections enumerates five objections. Each will be considered in turn.

#### 1. *Counsel's Failure to Consult with Ezell Post-Sentencing.*

Ezell's first objection to the Report and Recommendation is that it overlooks the significance of uncontroverted testimony that counsel did not consult with Ezell about an appeal after the sentencing hearing. Petitioner's characterization of the evidence on this point is accurate. Indeed, Madden testified on direct examination that he felt the disposition of the sentencing hearing was extremely favorable for Ezell, particularly compared to the far bleaker prospects outlined in the PSR. According to Madden, he did not think that Ezell wished to appeal, and certainly Ezell never asked that he do so; however, Madden unequivocally stated that he would have talked with Ezell post-sentencing about his appeal rights had Ezell asked. As Madden put it, upon leaving the courtroom following the sentencing hearing, he had "no reason to believe that any appeal was required or desired" by Ezell. Nonetheless, Madden acknowledged on cross-examination that he had not spoken with Ezell following the sentencing hearing concerning appeal rights, the merits or possible outcomes of any appeal, and so on; rather, Madden's testimony was that he viewed the undersigned's notification to Ezell at the sentencing hearing concerning appeal rights and deadlines, as well as Madden's pre-sentencing discussions with Ezell concerning the appeal waiver in the plea agreement, to be sufficient.[6]

---

[5]  *See also Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992) (when objection is made to magistrate judge's factual findings, "appellate court must be satisfied that a district judge has exercised his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations") (citations omitted).

[6]  Madden elaborated on this point by explaining that if the sentencing hearing had yielded an unfavorable result, he would have explored appeal issues with Ezell further following that sentencing hearing. As things stood, however, Madden lacked notice of any problem with sentencing, which had produced a result for Ezell that was far better than what lawyer and client alike had expected.

Petitioner objects that Madden's admitted failure to consult with him about his appeal rights in the wake of the sentencing hearing is itself a violation of his Sixth Amendment right to effective assistance of counsel. As a general matter, defense counsel has a duty to consult with a defendant about a possible appeal even if the defendant has not instructed counsel to appeal. *See, e.g., Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008) ("even if the client does not directly request an appeal, counsel generally has a duty to consult with him about an appeal"); *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) ("counsel generally has a duty to consult with the defendant about an appeal," such that even "where a defendant has not specifically instructed his attorney to file an appeal, we must still determine whether counsel in fact consulted with the defendant about an appeal") (citations omitted). "[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal." *Thompson*, 504 F.3d at 1206.

This argument fails for two reasons. First, there is considerable doubt whether the duty-to-consult issue has been properly joined in these § 2255 proceedings. Neither Ezell's original § 2255 petition nor his subsequent filings appear to identify any failure-to-consult claim; indeed, prior to his Statement of Objection, petitioner's most expansive exposition of this ground for relief was that "[t]he Third issue involves the failure of Petitioner's counsel to file a requested appeal and to file it in a timely manner as requested by the Petitioner." (Doc. 119, at 4.) Petitioner said nothing about a failure to consult. In short, the Report and Recommendation did not address the failure-to-consult issue because, by all appearances, the Magistrate Judge was unaware that Ezell was seeking § 2255 relief on that basis.[7] Petitioner apparently having never

---

[7] The record strongly suggests that the Magistrate Judge had no inkling that Ezell sought relief on a failure-to-consult theory. Indeed, the Report and Recommendation sets forth Judge Milling's understanding that Ezell's only claims were for ineffective assistance relating to the firearm enhancement and base offense level calculation, as well as an ineffective assistance claim predicated on his attorney's failure to file an appeal despite being asked to do so. (Doc. 143, at 2, 11.) And petitioner never objected when the Magistrate Judge specified that the sole issue to be explored at the November 30 hearing was "Petitioner's claim that his trial counsel failed to file a notice of appeal and appeal his sentence as instructed." (Doc. 134, at 2.) Thus, Judge Milling appears to have been in the dark as to Ezell's intent to pursue a theory that Madden rendered ineffective assistance by failing to consult with him about the possibility of appeal.

previously alleged that counsel failed to satisfy his duty to consult, he should not be permitted to litigate the issue now via objections to the Report and Recommendation, where he never presented that argument to the Magistrate Judge. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding "that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge" prior to issuance of report and recommendation).

Second, even if the failure-to-consult issue were properly joined in this § 2255 proceeding, the law is clear that defense counsel's duty to consult with his or her client about an appeal is not absolute. *See Roe v. Flores-Ortega*, 528 U.S. 470, 479, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient."); *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) ("A criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal. In some cases, the Sixth Amendment requires such consultation; in others, it does not."). In particular, "[c]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Devine*, 520 F.3d at 1288 (citation omitted); *see also Thompson*, 504 F.3d at 1207 (similar). Among the "highly relevant" factors that courts examine in deciding whether a duty to consult exists are (i) "whether the conviction follows a guilty plea," (ii) "whether the defendant received the sentence he bargained for," and (iii) "whether the plea agreement expressly waived some or all appeal rights." *Otero*, 499 F.3d at 1270 (citation omitted).

The credibility findings of the Magistrate Judge show that Ezell did not reasonably demonstrate to Madden that he was interested in appealing.[8] Nor were there circumstances

---

[8] Ezell has not expressly challenged these credibility findings in his Statement of Objection. *See* doc. 144, at 2 (recognizing that "[a]dmittedly the magistrate judge is free to make such credibility choices as he deems appropriate"). Even if he had, the Court finds the Magistrate Judge's credibility determinations to be justified and correct based on its review of the Report and Recommendation and its impressions upon listening to the recorded testimony of Ezell, Ezell's relatives, and Madden at the evidentiary hearing. In particular, the Court credits Madden's testimony that he would have filed a notice of appeal had Ezell requested it. Madden (Continued)

known or knowable to Madden from which he should have concluded that a rational defendant in Ezell's position might want to appeal. Madden knew that his client had voluntarily entered a plea of guilty to a cocaine conspiracy charge, that Ezell had signed a limited appeal waiver by which he relinquished the right to challenge most aspects of his conviction or sentence on direct appeal, that there was compelling evidence linking Ezell to the trafficking of a large volume of cocaine, that a deal reached at the sentencing hearing had shaved some 75 months off the low end of Ezell's sentencing guideline range, that the sentencing court had imposed a low-end guidelines sentence, and that this outcome was far more favorable than the defense team had anticipated. Madden was unaware of -- and Ezell has never identified -- any nonfrivolous grounds for appeal. Madden also knew that the undersigned had expressly notified Ezell at the sentencing hearing of his right to appeal and his right to proceed *in forma pauperis* in that endeavor. Taking these circumstances in the aggregate, the Court is satisfied that Madden was under no constitutionally imposed duty to consult with Ezell about his appeal rights.

In so concluding, the Court derives guidance from *Devine v. United States*, 520 F.3d 1286 (11th Cir. 2008), in which the Eleventh Circuit found no duty to consult in circumstances analogous to those present here. The *Devine* panel observed that "a rational defendant in Devine's position would not want to appeal, because there were no nonfrivolous grounds for appeal," inasmuch as Devine had pled guilty, there was no suggestion that the plea was invalid, Devine had agreed to an appeal waiver constraining him from appealing anything other than an illegal sentence, and the low-end guidelines sentence imposed was plainly not illegal. 520 F.3d at 1289. In light of these considerations, and given the absence of clear error in the lower court's finding that Devine had not reasonably demonstrated to counsel that he was interested in

---

is a highly capable criminal defense attorney with more than three decades of experience. He credibly testified that he has never omitted filing a notice of appeal when a client has asked or instructed him to do so. Even when Madden disagrees that an appeal is appropriate, he explained, he would file and has filed notices of appeal upon request by clients. It is also significant that neither Ezell nor his testifying family members ever wrote to Madden to ask him to file an appeal, and that Ezell did not raise this failure-to-appeal ground for § 2255 relief until well after filing his original petition, and then included it in skeletal form as an apparent afterthought. Based on these facts and circumstances, the Court upon *de novo* review **accepts and adopts** the Magistrate Judge's credibility determination and **finds** as fact that Ezell never instructed or requested Madden to file a notice of appeal.

appealing, the Eleventh Circuit concluded that "counsel in this case did not have an affirmative duty to consult further with Devine about an appeal." *Id.*; *see also Gaston v. United States*, 2008 WL 4946211, *2 (11th Cir. Nov. 20, 2008) (counsel had no duty to consult with defendant about appeal, where there were no nonfrivolous grounds for appeal, defendant had received low-end guidelines sentence and had signed appeal waiver, defendant gave no indications that he wanted to appeal and no rational defendant would have filed an appeal); *Cuero v. United States*, 2008 WL 676058, *2 (11th Cir. Mar. 13, 2008) ("Since a rational defendant would not have been interested in an appeal in this case and the record supports the district court's finding that Cuero never indicated any interest in an appeal, trial counsel did not have a constitutional duty to consult with Cuero about an appeal."). The same or similar considerations to those leading the appellate courts in *Devine, Gaston* and *Cuero* to find no duty to consult are likewise present here. Accordingly, assuming that Ezell has properly brought a failure-to-consult claim as part of his § 2255 petition, his objections to the Report and Recommendation predicated on his trial counsel's alleged violation of the duty to consult are **overruled**.

2.  *Purported Improper Focus on Merits of Appeal.*

Next, Ezell objects to the Magistrate Judge's reliance on its finding that "Madden had no reason to believe that an appeal was warranted, necessary, or desirable." (Doc. 143, at 18.) According to petitioner, whether an appeal was warranted, necessary or desirable "is irrelevant," and "[t]he only relevant fact is whether the Petitioner wanted to appeal." (Doc. 144, at 3.) Petitioner is incorrect. To be sure, the threshold question is whether Ezell ever asked or instructed Madden to file a notice of appeal on his behalf. If he did, then the merits of any potential appeal are not germane to the analysis. *See, e.g., Flores-Ortega*, 528 U.S. at 486 (in failure to appeal context, petitioner need not "demonstrate that his hypothetical appeal might have had merit" to show prejudice but must instead "demonstrate that, but for counsel's deficient conduct, he would have appealed"); *Cuero*, 2008 WL 676058, at *2 ("The defendant need not show the putative merits of such an appeal."). But the Magistrate Judge made a specific finding of fact, which this Court has adopted, that Ezell never requested or directed that Madden file an appeal; therefore, that threshold fact question is decided adversely to petitioner. The Report and Recommendation rests not on the desirability or merit of an appeal, but on the Magistrate Judge's specific, well-supported factual finding (based on credibility determinations at the November 30 hearing) that Ezell never asked his trial counsel to appeal.

Where no request to appeal has been made, the follow-up inquiry concerns the duty to consult, as discussed above. The aforementioned authorities clearly establish that whether an appeal would have been warranted, necessary or desirable is highly relevant to the determination of whether Madden had a duty to consult with Ezell about the possibility of appeal. Thus, while Judge Milling's conclusions concerning the propriety and desirability of appeal are not, strictly speaking, relevant to whether counsel rendered ineffective assistance by failing to appeal when instructed by petitioner to do so, those findings are relevant to the subsidiary question of whether a duty to consult exists. Therefore, the Court has properly considered those findings in the context of the failure-to-consult analysis, *supra*. Petitioner's objection that inclusion of those findings in the Report and Recommendation is unnecessary and irrelevant to his claims is **overruled**, inasmuch as Ezell is now focusing on a failure-to-consult theory as to which the merits of any appeal are a proper consideration.

3. *Effect of Petitioner's Raising this Ground for Relief as an Afterthought.*

In assessing credibility, the Magistrate Judge reasoned, in part, that "Ezell's failure to present this claim in a timely manner … leads the Court to believe that the claim was only an afterthought made in hindsight." (Doc. 143, at 18.) The implication of this analysis is that Ezell's testimony that he asked Madden to file an appeal is not credible because, had he truly believed that his lawyer had ignored his instructions to appeal, surely he would have emphasized the point more forcefully and in a more timely manner in his § 2255 documents. Rather than pursuing an ineffective assistance claim predicated on failure to appeal in a vigorous and prompt manner, Ezell tarried for a considerable time before raising that claim and, even then, mentioned it only in passing. The Magistrate Judge's point was that these circumstances cast doubt on the veracity of Ezell's account (and that of his witnesses) that petitioner had expressly instructed Madden to file an appeal.

In his Statement of Objection, petitioner challenges this reasoning. In particular, he points to Ezell's then-*pro se* status and cites testimony from the evidentiary hearing that Ezell has difficulty reading. In petitioner's view, "[t]he fact that an untrained, near illiterate *pro se* defendant might have failed to originally raise[] his claim in the initial petition should have no bearing" on the question of credibility. (Doc. 144, at 4.) Upon careful consideration, however, the Court is persuaded that the delayed and de-emphasized manner in which Ezell asserted his claim that counsel failed to file an appeal supports an inference that Ezell's version of the facts is

not credible. The Court understands that Ezell is an unsophisticated defendant who was proceeding *pro se* in filing his § 2255 petition. But we are dealing with a quite intuitive concept here. Ezell says he instructed Madden to file an appeal, but that Madden never did it. A petitioner need not hold a J.D. to feel wronged by such an omission. If that is really what happened, the Court would expect any reasonable petitioner (whether aided by counsel or not, whether sophisticated or not) to highlight such a claim in his § 2255 petition, rather than failing to mention it at all for months after the fact and then asserting it only in passing. Besides, notwithstanding his lack of sophistication, Ezell saw fit to blame his attorney for constitutionally deficient performance at the sentencing hearing from the outset in his § 2255 filings. Surely a petitioner looking for ways to accuse his attorney of malfeasance or incompetence would cite his disregard of instructions to file an appeal (if, in fact, the petitioner had given such instructions) before criticizing his handling of particular sentencing guidelines issues, especially when defense counsel's labors had resulted in those guidelines issues being resolved in a manner that chopped years off the petitioner's sentence.

The point is simple: It was not error for the Magistrate Judge, in judging credibility, to consider the time and manner in which Ezell asserted this claim in his § 2255 petition. Petitioner's failure to raise that claim promptly and failure to devote any meaningful attention to it when he did is difficult to reconcile with Ezell's testimony that Madden failed to comply with his request to appeal. In weighing these circumstances, the Magistrate Judge was justified in drawing a reasonable inference that Ezell was not telling the truth.[9] Petitioner's objection to that inference is **overruled**.

---

[9] In any event, petitioner's objection blows this relatively minor consideration out of proportion. The fact that Ezell had only raised this claim as an "afterthought" was neither essential nor particularly important to the Magistrate Judge's ultimate credibility finding, but was instead simply one of a number of factors recited in the Report and Recommendation to explain why the Magistrate Judge credited Madden's testimony over that of Ezell or his supporting witnesses. (*See* doc. 143, at 17-18.) By all appearances, the Magistrate Judge could and would have made the same credibility findings even if he did not deem Ezell's failure to pursue this claim in a prompt and vigorous manner as indicia of his credibility. Thus, even if the Court were to sustain this particular objection, the ultimate outcome of the Report and Recommendation and disposition of the § 2255 petition would remain unchanged.

### 4. *Failure to Adhere to ABA Standards and Local Rules.*

Petitioner's next objection to the Report and Recommendation is that Madden's admission that he failed to consult with Ezell about an appeal runs afoul of American Bar Association Standards for Criminal Justice, as well as the Local Rules of this District Court. In particular, Ezell explains, the ABA Standards specify that, after conviction, "[d]efense counsel should give the defendant his or her professional judgment as to whether there are meritorious grounds for appeal and as to the probable results of an appeal," and "should also explain to the defendant the advantages and disadvantages of an appeal." ABA Standards for Criminal Justice, Defense Function 4-8.2(a). Petitioner also relies on Local Rule 83.7, which provides that if retained counsel is not asked by the client to file an appeal, "counsel shall file a statement that he has informed the defendant of his right to appeal and that the defendant has advised him that he does not desire to appeal." LR 83.7. The crux of petitioner's objection is that Madden's testimony establishes that he did not satisfy either of these standards in his representation of Ezell.

The problem with this line of attack on the Report and Recommendation is that it improperly conflates non-constitutional performance standards with the purely constitutional claim set forth in Ezell's § 2255 petition. Petitioner seeks relief for his counsel's failure to file an appeal solely on the ground that such an omission amounts to a violation of his Sixth Amendment right to effective assistance of counsel. Whether Madden's performance in this regard did or did not meet ABA Standards or Local Rules is a different question than whether his performance satisfied minimum constitutional guarantees. In that regard, courts have resisted efforts by defendants and habeas petitioners to engraft ABA Standards onto the Sixth Amendment. For example, the Supreme Court has explained in this context that "[p]revailing norms of practice as reflected in American Bar Association standards and the like … are only guides, and imposing specific guidelines on counsel is not appropriate." *Flores-Ortega*, 528 U.S. at 479 (citation and internal quotation marks omitted) (rejecting notion that ABA Standards for Criminal Justice delineate parameters of defense counsel's constitutional obligation to consult with defendant regarding the possibility of appeal); *see also Chandler v. United States*, 218 F.3d 1305, 1317 n.21 (11th Cir. 2000) ("we do not understand the Supreme Court to make the ABA Standards part of the highest law of the land, even if one accepts that those standards reflect a good policy"). To the extent, then, that Ezell's position is that his Sixth Amendment

claim for ineffective assistance concerning his counsel's failure to consult with him should be evaluated under more stringent ABA Standards or Local Rules, rather than under the test outlined in the *Devine / Thompson* line of authorities described *supra*, such a suggestion is incorrect as a matter of law.

What that leaves petitioner with is, at most, a non-constitutional claim predicated on counsel's failure to abide by ABA Standards and the Local Rules in consulting with Ezell about his appeal rights. But no such non-constitutional claim has been joined in this § 2255 proceeding, and petitioner cannot utilize his objections to the Report and Recommendation as a platform for interposing a new, previously unarticulated ground for collaterally attacking his sentence. Even if this claim were properly part of Ezell's § 2255 petition, it would be unavailing on the merits. The law is clear that "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal punctuation omitted). Under the circumstances presented here (*i.e.*, lack of nonfrivolous grounds for appeal, execution of appeal waiver, low-end guideline sentence, etc.), that Madden may not have fulfilled the letter of the guidance presented in the ABA Standards, and may not have adhered to the Local Rules' requirements concerning non-appeal statements, simply does not arise to the level of a fundamental defect, a miscarriage of justice, or a deprivation of rudimentary demands of fair procedure. Because petitioner cannot parlay his allegations concerning ABA Standards and Local Rules into anything approaching a viable § 2255 claim in this action, his objection on this basis is properly **overruled**.

        5.      *Denial of Certificate of Appealability.*

Finally, petitioner takes issue with the Report and Recommendation's finding that no Certificate of Appealability ("COA") is appropriate in this case. According to Ezell, "trial counsel's failure to comply with the ABA Standards and our local rule … creates an issue of the ineffective assistance of counsel sufficient for the issuance of COA." (Doc. 144, at 5.)

"Pursuant to [28 U.S.C.] § 2253(c)(2), a COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right," such that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Bell v. Florida Atty. Gen.*, 614 F.3d 1230, 1231 (11th Cir. 2010) (citations and internal quotation

marks omitted). For the reasons stated *supra*, the Court finds that reasonable jurists could not debate whether Ezell's § 2255 petition should have been resolved in a different manner or whether the issues presented deserve encouragement to proceed further. Petitioner's reliance on ABA Standards and Local Rules in no way alters the analysis or the conclusion. Therefore, the Court **overrules** petitioner's objection to the Magistrate Judge's recommendation that no COA is warranted in this case. Also, the Court agrees with the Magistrate Judge's recommendation that Ezell is ineligible for *in forma pauperis* status in any appeal of the denial of his § 2255 petition and **certifies** that any such appeal would not be taken in good faith for the reasons specified herein and in the Report and Recommendation.[10]

### III. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. The undersigned **adopts** the Magistrate Judge's recommendation made under 28 U.S.C. § 636(b)(1)(B), and **overrules** petitioner's objections (docs. 144, 145).
2. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 68) is **denied**.
3. A Certificate of Appealability is **denied** pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, and petitioner is not entitled to appeal *in forma pauperis*.
4. Given that W. Gregory Hughes was appointed to represent petitioner solely in connection with the evidentiary hearing (*see* doc. 134) as required by Rule 8(c) of the Rules Governing § 2255 Cases, and given that the hearing and all post-hearing briefing have now concluded, Hughes' appointment in this matter is **terminated**.

DONE and ORDERED this 28th day of February, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] Notwithstanding a finding of economic eligibility, "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3).